UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SERAPHIN JEAN, ) | |
| ) | |
| *Plaintiff* ) | |
| ) | Cause No. 1:19-cv-2005 RLM-DLP |
| v. ) | |
| ) | |
| INDIANA DEPARTMENT OF ) | |
| CORRECTION, ) | |
| ) | |
| *Defendant* ) | |

OPINION AND ORDER

Seraphin Jean sued the Indiana Department of Correction for violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging he was wrongfully fired from his employment with the Department based on his race, national origin, and disability. Mr. Jean has since withdrawn his claims under Section 1981 and the American With Disabilities Act, leaving two Title VII claims for wrongful termination based on his race and national origin. The Department has moved for summary judgment. For the following reasons, the court GRANTS the Department's motion [Doc. No. 39].

Mr. Jean is a Black Haitian who began working for the Department in January 2018 as a correctional officer. On the morning of September 22, 2018, Captain Chris Shrewsbury ordered that all correctional officers on the second range—including Mr. Jean and a former correctional officer, Paul Medlock—secure and conduct a count of all offenders on the range. Mr. Jean relayed this message to Mr. Medlock, and a verbal argument erupted between them. Sergeant

Michael Cotton arrived and saw the two officers arguing in front of an offender. A control gate door separated the two officers; Mr. Jean was inside a control cage and Mr. Medlock was outside. Mr. Medlock told Mr. Jean to "open the door, and you will see who I am." Sergeant Cotton instead ordered Mr. Jean to open the stairwell gate so that only Sergeant Cotton could come inside the control cage. Mr. Jean opened the control cage door letting Mr. Medlock in, and the argument became physical. Mr. Jean says that he accidently opened the wrong door when he let Mr. Medlock in. Sergeant Cotton eventually entered the control cage and broke up the fight, then took Mr. Jean to his office to discuss what happened. Mr. Medlock was immediately suspended without pay pending an investigation into the incident.

On October 1, 2018, Warden Craig Grage sent letters to Mr. Medlock and Mr. Jean telling them they were fired because of the September 22 events. Mr. Jean responded with this lawsuit, alleging that he was actually terminated because of his race and national origin. The Department has moved for summary judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011) ("Summary judgment . . . is proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the movant] is entitled to judgment as a matter of law."). The court's function at the summary judgment

2

stage isn't "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making that determination, the court must construe the evidence, and all inferences that can reasonably be drawn from the evidence, in the light most favorable to the non-moving party. Id. at 249, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ."). The movant bears the burden of showing that there is no genuine issue of material fact, but the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256.

"[T]he singular question that matters in a discrimination case is: '[W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" Johnson v. Advocate Health and Hosps. Corp., 892 F.3d 887, 894 (7th Cir. 2018) (quoting Ortiz v. Werner Enters., Inc., 834 F.3d 760, 765 (7th Cir. 2016)). "To present this evidence, a plaintiff may utilize the McDonnell Douglas burden-shifting framework." McDaniel v. Progress Rail Locomotive, Inc., 940 F.3d 360, 368 (7th Cir. 2019) (citations omitted); see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). "Under this approach, the plaintiff must show evidence that (1) [he] is a member of a protected class, (2) [he] was meeting the defendant's legitimate expectations, (3) [he] suffered an adverse employment action, and (4) similarly situated employees

3

who were not members of [his] protected class were treated more favorably." Id. (quoting Skiba v. Illinois Cent. R.R. Co., 884 F.3d 708, 719 (7th Cir. 2018). "If the plaintiff meets each element of [his] prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." Id. (quoting Skiba v. Illinois Cent. R.R. Co., 884 F.3d at 719-720).

The McDonnell Douglas framework isn't the only method a plaintiff can use to prove his claim, it "is merely one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's" race, national origin, or another proscribed factor. Id. (quoting Johnson v. Advocate Health and Hosps. Corp., 892 F.3d at 894); Volling v. Kurtz Paramedic Servs., Inc., 840 F.3d 378, 383 (7th Cir. 2016) (observing that a "prima facie case in Title VII litigation . . . refers to a common, but not exclusive, method of establishing a triable issue of intentional discrimination"). "However the plaintiff chooses to proceed, at the summary judgment stage the court must consider all evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse employment action because of [a proscribed factor]." Id. (quoting Skiba v. Illinois Cent. R.R. Co., 884 F.3d at 720). Courts "therefore also assess the evidence 'as a whole, rather than asking whether any particular piece of evidence proves the case by itself.'" Id. (quoting Ortiz v. Werner Enters., Inc., 834 F.3d at 765).

4

Mr. Jean has presented his argument within the McDonnell Douglas framework, so the court begins its assessment of the evidence by using that construct and addressing first whether Mr. Jean has established a prima facie case of discrimination. The court will then cumulatively assess all the evidence presented by Mr. Jean to determine whether it permits a reasonable factfinder to determine that his termination was attributable to his race or national origin. David v. Board of Trustees of Cmty. College Dist. No. 508, 846 F.3d 216, 224 (7th Cir. 2017).

The parties agree that Mr. Jean satisfies the first and third elements of the McDonnell Douglas framework: he is a Black Haitian who was fired from his job. The Department contends that Mr. Jean can't establish the second and fourth elements—that Mr. Jean was meeting the Department's legitimate expectations in the workplace, and that similarly situated employees who weren't members of a protected class were treated more favorably. Ultimately, the Department argues that it terminated Mr. Jean because of his misconduct rather than prohibited discriminatory animus. Mr. Jean responds that the Department applied its legitimate expectations in a disparate manner and that similarly situated white employees were treated more favorably.

When a plaintiff claims that he "was disciplined more harshly than non-black employees who also violated the policy" (i.e., that an employer applied its legitimate expectations in a discriminatory way) the second and forth prongs of the McDonnell Douglas framework merge, and the plaintiff doesn't "have to show [he] was meeting the employer's legitimate expectations to establish a prima facie

5

case of discrimination." Curry v. Menard, Inc., 270 F.3d 473, 478 (7th Cir. 2001). In this context, the defendant's argument that the plaintiff didn't meet the defendant's legitimate expectations "is more appropriately considered in [the court's] analysis of pretext." Id. (citing Vakharia v. Swedish Covenant Hosp., 190 F.3d 799, 807 (7th Cir.1999)).

So the court turns its attention to the fourth element of the McDonnell Douglas framework: whether Mr. Jean showed that he was treated differently than similarly situated employees not in his protected class. "All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination. The 'similarly situated' prong establishes whether all things are in fact equal." Filar v. Bd. of Educ. of City of Chicago, 526 F.3d 1054, 1061 (7th Cir. 2008) (citing Humphries v. CBOCS West, Inc., 474 F.3d 387, 405 (7th Cir. 2007)). "Its purpose is to eliminate other possible explanatory variables, 'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'—discriminatory animus." Coleman v. Donahoe, 667 F.3d 835, 846 (7th Cir. 2012) (quoting Humphries v. CBOCS West, Inc., 474 F.3d at 405).

"Although similarly situated employees 'need not be identical in every conceivable way,' they 'must be directly comparable to the plaintiff in all material respects.'" Id. (quoting Patterson v. Indiana Newspapers, Inc., 589 F.3d 357, 365–366 (7th Cir. 2009)). "In the usual case a plaintiff must at least show that the comparators (1) 'dealt with the same supervisor,' (2) 'were subject to the same

6

standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" Id. (quoting Patterson v. Indiana Newspapers, Inc., 589 F.3d at 365). "But 'this is not a hard and fast test, and there is no magic to these considerations. In the employment discrimination context, the requirement to find a similarly situated comparator is really just the same requirement that any case demands—the requirement to submit relevant evidence.'" McDaniel v. Progress Rail Locomotive, Inc., 940 F.3d at 369 (citing Johnson v. Advocate Health and Hosps. Corp, 892 F.3d at 895). "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." Id. (citing Johnson v. Advocate Health and Hosps. Corp, 892 F.3d at 895); *see also* Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827, 831 (7th Cir. 2007) ("The similarly-situated requirement . . . is a common-sense flexible inquiry that seeks to determine whether there are enough common features between the individuals to allow a meaningful comparison."). "Ultimately, plaintiff bears the burden of showing the individuals he identifies are similarly situated." Skiba v. Illinois Cent. R.R. Co., 884 F.3d 708, 723-724 (7th Cir. 2018); *see also* Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002) ("[W]e hold that [the plaintiff] failed to meet her burden of establishing that [the co-worker] is a similarly situated employee.").

Mr. Jean submits Officers Wilson, Muensterman, and Criss as White comparators who were treated more favorably. Mr. Jean says that Officer Wilson

7

was involved in a physical altercation and wasn't fired, and that the Department's Human Resource Director identified Officers Muensterman and Criss as employees who engaged in conduct similar to Mr. Jean's but weren't fired. The Department concedes that all of these officers were subject to the same standards of conduct as Mr. Jean, but argues that Mr. Jean hasn't provided enough evidence to establish that any of these officers dealt with the same supervisor or engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them from Mr. Jean.

The Department is correct. Mr. Jean's evidence isn't enough to carry his burden in establishing his prima facie case. The only evidence Mr. Jean offers to show that Officers Wilson, Muensterman, and Criss dealt with the same supervisor is a conclusory statement that "Grage was the decision-maker in all of the incidents." Resp. 7. Besides that, Mr. Jean offers no evidence showing that Warden Grage was the warden when Officers Wilson, Muensterman, and Criss were disciplined. "Arguments that consist of conclusory allegations that are not properly developed are waived." Johnson v. Advocate Health and Hosps. Corp., 892 F.3d 898 (citing Anderson v. Catholic Bishop of Chicago, 759 F.3d 645, 649 (7th Cir. 2014)). But moreover, the court can't find anything in Mr. Jean's designation of evidence to establish that Warden Grage was the same supervisor that dealt with Mr. Jean's proposed comparators.

The same issue plagues Mr. Jean's argument that Officers Wilson, Muensterman, and Criss engaged in similar conduct as Mr. Jean but were

8

treated more favorably. Mr. Jean argues nearly in sum that "Officer Wilson, J. Muenterman and D. Criss were similarly situated employees who were treated better than Jean by Grage. Officer Wilson was involved in a physical altercation, but was not terminated. In addition, J. Muenterman and D. Criss violated the same policies as Jean, but neither were terminated. . . . Officer Wilson, J. Muenterman and D. Criss engaged in similar or worse conduct." Resp. 7.

Again, this argument is mostly conclusory, but it's all the more so problematic because it doesn't provide the court with any evidence of the comparators' underlying conduct to preform a comparative analysis. *See* Johnson v. Advocate Health and Hosps. Corp., 892 F.3d at 898. The court knows next to nothing about the circumstances surrounding the proposed comparators' disciplinary action. Moreover, what the court does know about Officer Wilson's situation comes from Mr. Jean's own affidavit concerning events that happened at the Department after Mr. Jean was fired. Ani-Deng v. Jeffboat, LLC, 777 F.3d 452, 455 (7th Cir. 2015) (rejecting an affidavit as having "no weight" where "[t]here is no evidence to suggest that [the affiant] had personal knowledge . . . ."). Mr. Jean additionally tries to establish Officers Muensterman and Criss as comparators because "the Defendant identified them as similar [sic] situated when it compared Jean's discipline to them in the human resource email." Resp. 7; Pl.'s Ex. E. But all the email says is that Officer Criss was disciplined for "arguing" without providing any context, and it doesn't say what Officer Muensterman was disciplined for at all. The email is unhelpful to Mr. Jean because it doesn't provide the court with sufficient context to preform a

9

comparative analysis and determine whether Officers Muensterman and Criss are comparators. Mr. Jean just hasn't carried his burden in providing evidence that Officers Wilson, Muensterman, and Criss are adequate comparators. *See* Johnson v. Advocate Health and Hosps. Corp., 892 F.3d at 895; Skiba v. Illinois R.R. Co., 884 F.3d at 723.

Stepping back from the McDonnell Douglas framework for a moment and evaluating the evidence holistically, Mr. Jean hasn't shown that there is a genuine issue of material fact that a reasonable juror could find that he was fired from his position based on his race or national origin. The complaint is abundant with conclusory statements that Mr. Jean was fired based on a proscribed factor, but the evidence is meager in substantiating those claims. The Department says Mr. Jean was fired because:

> Officer Seraphin Jean (Jean) engaged in unprofessional behavior by arguing with Officer Paul Medlock (Medlock) with offenders present. Jean antagonized Medlock by making comments to him comparing him to a "little kid" and further by encouraging Medlock to "go ahead come at me if you think you can". Jean further demonstrated negligence in his duties by opening the control cage gate allowing Medlock access to the cage while the argument ensued. Jean alleges he pushed the wrong button by mistake which opened the gate. Jean further states that he has pushed the wrong button before allowing the wrong gates to open. This is a critical error that could jeopardize the safety and wellbeing of staff and offenders. Medlock alleges that Jean did spit on him which triggered Medlock's response of pushing. Jean initially denied spitting and later stated he thought he may have spit in the course of talking since they were face to face in the argument. Jean changed his account of opening the gate and of the spitting incident as the discussion continued and therefore did not come across as credible in his statements. In addition to Medlock's allegation of Jean spitting on him, an offender also provided a written statement that he witnessed the spitting (statement attached). The fact that this arguing and inappropriate behavior between both parties took place and that it happened in the presence of offenders is unacceptable.

10

Reply 9; Pl.'s Ex. E. Mr. Jean hasn't presented evidence showing that there is a genuine issue of material fact that he wasn't fired for the reasons cited but instead because he is a Black Haitian.

Accordingly, for the foregoing reasons, the court GRANTS the Department's motion for summary judgment [Doc. No. 39].

SO ORDERED.

ENTERED:  March 15, 2021

                                                   /s/ Robert L. Miller, Jr.
                                        Judge, United States District Court

Distribution:  All electronically registered counsel of record